| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN TIPPECANOE SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF TIPPECANOE | ) | CAUSE NO. 79D01-0602-CT-58 |

PATRICIA TRIMBLE, JACQUELINE )
MARENHOLTZ, DANIEL MARIOTTI, JOSEPH )
MCCORMICK, JOHN MCGLADE, LINDA )
MCKINNEY, MARCELLA MICHAEL, JOSEPH )
MULLER, ANDREA MURPHY, VERA OHARA, )
LISA PANCARI, ROBERT PASS, CAROL PIZIAK, )
ELAINE POPE, ALBERT SARGENT, KATHRYN )
SHAFFER, CHRIS SOWELL, DENISE )
SPEAKMAN, EVELYN STAFFORD, JOYCE )
STEVENS, ALLISON SUMMERS, CHARLES )
TAYLOR, DORA VIRDEN, FRIEDA WAGNER, )
RICHARD WAGNER, LAURA WALTERS, JOHN )
WEST, JOHN WHITLOCK, ADRIAN WHITMAN, )
ELAINE WILSON, GAIL WILSON, WILMA )
WINGARD, VICTOR WOLFE, JUDITH YODER, )
AND MARY ZENTZ, )
  )
        Plaintiffs, )
  )
        v. )
  )
ELI LILLY and COMPANY, )
  )
        Defendant. )

FILED

FEB 23 2006

[illegible stamp]
Tippecanoe County Clerk

## PLAINTIFFS' ORIGINAL COMPLAINT FOR PERSONAL INJURIES AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, and for their Original Complaint against Defendant Eli Lilly and Company allege and aver as follows:

### PRELIMINARY STATEMENT

1.      This is a proceeding brought by Plaintiffs seeking damages for personal injuries suffered as a result of the Plaintiffs' ingestion of a dangerous pharmaceutical product ("Zyprexa"®[1]), which was continuously manufactured, marketed, advertised, and distributed to the general public by Defendant Eli Lilly and Company.

## PARTIES

### PLAINTIFFS:

2.      Each of the following Plaintiffs was prescribed by their individual physician[s] the prescription drug Zyprexa and as a result, later developed diabetes, or other personal injuries as a result thereof:

| First Name: | Last Name: | Hometown: | State |
|---|---|---|---|
| Patricia | Trimble | Morrisville | PA |
| Jacqueline | Marenholtz | South Park | PA |
| Daniel | Mariotti | Philadelphia | PA |
| Joseph | McCormick | Pittsburgh | PA |
| John | McGlade | Hatboro | PA |
| Linda | McKinney | Bensalem | PA |
| Marcella | Michael | Gettysburg | PA |
| Joseph | Muller | Philadelphia | PA |
| Andrea | Murphy | Philadelphia | PA |
| Vera | Ohara | Ebensburg | PA |
| Lisa | Pancari | Pghy | PA |
| Robert | Pass | Philadelphia | PA |
| Carol | Piziak | Philadelphia | PA |
| Elaine | Pope | Audubon | PA |
| Albert | Sargent | Eldred | PA |
| Kathryn | Shaffer | Sykesville | PA |
| Chris | Sowell | Duguense | PA |
| Denise | Speakman | Philadelphia | PA |
| Evelyn | Stafford | Pittsburgh | PA |
| Joyce | Stevens | Pittsburgh | PA |

---

[1]      Zyprexa is the registered trademark of Defendant Eli Lilly and Company.

| Allison | Summers | Pittsburgh | PA |
|---------|---------|------------|-----|
| Charles | Taylor | Philadelphia | PA |
| Dora | Virden | Drexel Hill | PA |
| Frieda | Wagner | Edinboro | PA |
| Richard | Wagner | Washington | PA |
| Laura | Walters | Monongahela | PA |
| John | West | Langhorne | PA |
| John | Whitlock | Bensalem | PA |
| Adrian | Whitman | Philadelphia | PA |
| Elaine | Wilson | Pittsburgh | PA |
| Gail | Wilson | Boothwyn | PA |
| Wilma | Wingard | Adah | PA |
| Victor | Wolfe | Ford City | PA |
| Judith | Yoder | Philadelphia | PA |
| Mary | Zentz | Butler | PA |

**DEFENDANT:**

3.    At all times herein mentioned, Defendant Eli Lilly and Company, (hereafter "Eli Lilly") was and is a corporation incorporated, operating and existing under the laws of incorporation, of the State of Indiana, with its principal place of business in Indiana, continuously doing business in the State of Indiana for monetary profit, and also within this judicial district. At all times herein mentioned, Defendant Eli Lilly, in interstate commerce and including this judicial district, purposefully marketed, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as Zyprexa® (hereafter Zyprexa - also known as Olanzapine).    According to Eli Lilly's own website, through its Lilly Tippecanoe Laboratories division, Defendant Eli Lilly employs over 1,000 associates in Tippecanoe County and manufactures Zyprexa in Tippecanoe County. Upon information and

belief, some or all of the Zyprexa ingested by Plaintiffs was manufactured within Tippecanoe County by Defendant Eli Lilly at its Lilly Tippecanoe Laboratories division.

According to records maintained with the Indiana Secretary of State, Defendant Eli Lilly may be served with process by and through its registered agent:

> **Robert A. Armitage**
> **Eli Lilly and Co.**
> **Lilly Corp Center**
> **Indianapolis, IN 46285**

4.     At all times herein mentioned, Defendant Eli Lilly was the actor engaged in the acts herein alleged, acting through its agents and employees, and at all times, the actions and omissions asserted in this pleading were committed by agents or employees acting within the purpose and scope of said agency and/or employment, and/or all of said acts and conduct were ratified and approved by said Defendant.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to Indiana State Law, because the amount in controversy exceeds the minimum jurisdiction of this Court, which is the Court of primary trial jurisdiction in Indiana.

6.     Venue is further proper in this District Court pursuant to Indiana Law, including without limitation Ind. T.R. 75(A)(4), in that the Defendant Eli Lilly and Company maintains large scale operations within Tippecanoe County, is the County's 8th largest employer, employing well over 1,000 persons, and that the Defendant Eli Lilly has at relevant times maintained a manufacturing facility in Tippecanoe County (a/k/a Lilly Tippecanoe Laboratories) where Zyprexa – the drug in question – is manufactured, has advertised within this county, has

received substantial compensation and profits from sales of the drug Zyprexa manufactured within Tippecanoe County, including upon information and belief, the Zyprexa ingested by Plaintiffs, and additionally or alternatively upon information and belief has made material omissions and misrepresentations and/or breached warranties in this District.

### FACTUAL ALLEGATIONS

7.      Plaintiffs would show that Plaintiffs ingested Zyprexa manufactured, marketed, and supplied by Defendant and prescribed by Plaintiffs' physicians. As a direct and proximate result of ingesting Zyprexa, Plaintiffs experienced numerous abnormal complications and side effects, and were ultimately diagnosed with diabetes, a serious and potentially life threatening illness.

8.      As a direct, proximate and legal result of the ingestion of Zyprexa, Plaintiffs suffered injuries in a sum in excess of the jurisdictional amount required by this Court.

9.      As a direct, proximate and legal result of the ingestion of Zyprexa, Plaintiffs were required to, and did, employ physicians and other medical professionals to examine, treat, and care for Plaintiffs and therefore Plaintiffs has incurred medical and incidental expenses and Plaintiffs will incur future medical and incidental expenses.

10.      Zyprexa is among a group of drugs called the "atypical antipsychotic drugs" approved by the FDA and prescribed for the treatment of schizophrenia and bipolar disorder. In 1996, the United States Food & Drug Administration ("FDA") approved Zyprexa for use for the treatment of schizophrenia. In 2000, the FDA approved Zyprexa for use for the short-term treatment of acute mixed or manic episodes associated with bipolar disorder. In 2004, the FDA

approved Zyprexa for maintenance in the treatment of bipolar disorder, also known as manic-depressive illness.

## AGGRESSIVE MISMARKETING OF ZYPREXA

11.     At all times relevant, Defendant Eli Lilly did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, and otherwise distributed Zyprexa.

12.     Zyprexa has been widely advertised by the Defendant Eli Lilly as effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other treatments. Defendant has realized significant profits from the sale of Zyprexa, which is one of Defendant's top-selling drugs. Since Defendant introduced Zyprexa in 1996, it has been prescribed to more than 12 million people worldwide. In 2003, approximately seven million prescriptions for Zyprexa were dispensed resulting in more than $2 billion in sales. In 2003, Zyprexa was the seventh largest selling drug in the country by retail sales. Based upon information and belief, total profit from the sale of Zyprexa, both in the past and currently, exceeds billions of dollars annually.

13.     Based upon information and belief, Defendant Eli Lilly further marketed and promoted Zyprexa and further induced physicians to prescribe Zyprexa for treating disorders for which the FDA had not approved Zyprexa. This conduct, which is commonly called "off-label marketing," negates any warnings and additionally or alternatively negates the Learned Intermediary Rule/Defense, which might otherwise inure to the benefit of Defendant as to the Drug Zyprexa.

14.    Defendant Eli Lilly aggressively marketed Zyprexa in the United States, and in this judicial district.

15.    Defendant Eli Lilly undertook advertising campaigns promoting the virtues of Zyprexa in order to induce widespread use of the product.

16.    The advertising, by affirmation, misrepresentation and/or omission, falsely and fraudulently sought to create the image and impression that the use of Zyprexa was safe for human use and had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder, schizophrenia and other disorders.

17.    Defendant Eli Lilly purposefully minimized and understated health hazards and risks associated with Zyprexa. The Defendant, through literature and oral statements, deceived potential users of Zyprexa and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendant Eli Lilly falsely and fraudulently withheld relevant information from potential users of Zyprexa.

### UNDISCLOSED LINK TO DIABETES AND OTHER KNOWN HARMS

18.    Zyprexa is an atypical antipsychotic medication. Zyprexa, like other antipsychotic medications, may improve symptoms associated with schizophrenia and bipolar disorder such as agitation, delusions, hallucinations, and suspiciousness. Consumers, who have used, and in some instances continue to use Zyprexa, have available several alternative atypical antipsychotic medications including Abilify, Risperdal, Clozaril, Seroquel, and Geodon, as well as other antipsychotic medications, including Haldol, Thorazine, Prolixin, Navane, Stelazine, Trilafon,

and Mellaril. Some studies have found no clear evidence that Zyprexa is better than the alternative treatments. In November 2003, the Journal of the American Medical Association compared Zyprexa with Haldol and found "no statistically or significant advantages" of Zyprexa for treatment of schizophrenia.

19.    Between April 1996 and May 2001, the FDA received several reports of hyperglycemia, diabetes, worsening of existing diabetes, pancreatitis, and other severe injuries among children who were prescribed Zyprexa. Shortly after Defendant began selling Zyprexa, reports of consumers who were using Zyprexa suffering from hyperglycemia, acute weight gain, exacerbation of diabetes mellitus, pancreatitis, and other severe diseases and conditions associated began to surface. Defendant knew, or was reckless in not knowing, of these reports. Furthermore, Defendant has been aware of studies and journal articles linking use of Zyprexa with these and other severe and permanent diseases since 1998. Indeed, at least as early as 1998, the medical literature conclusively revealed data that linked Zyprexa with causing diabetes. An indicative report was published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." Other numerous reports and studies are prevalent throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks.

20.    Other numerous reports and studies are prevalent throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of

Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks.

   a. Indeed, in November 2001, the Journal of the American Medical Association reported a link between the use of Zyprexa by adolescents and development of hyperglycemia.

   b. In April 2002, the British Medicines Control Agency warned about the risk of diabetes for patients prescribed Zyprexa in its newsletter Current Problems in Pharmaco-vigilance. This newsletter reported forty (40) reports of diabetes, hyperglycemia, diabetic ketoacidosis, diabetic coma, and one death among users of Zyprexa. Subsequently, the British government required Defendant to warn consumers about the risk of diabetes and diabetic ketoacidosis, and further required Defendant to instruct patients who were using Zyprexa to monitor their blood sugar levels.

   c. In April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and diabetic coma for patients prescribed Zyprexa.

   d. On July 1, 2002, Duke University Medical Center issued a Press Release about a finding that linked Zyprexa to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed Zyprexa. These findings were published on July 2, 2002 in the Medical Journal of Pharmacotherapy, Vol. 22, No. 7, pages 841-52.

   e. Upon information and belief, the known danger that Defendant Eli Lilly's product

Zyprexa was causing hyperglycemia and diabetes was never indicated in any manner by said Defendant Eli Lilly to Plaintiffs or to Plaintiffs' physicians who prescribed the product to Plaintiffs and the true risk of Zyprexa was not adequately and properly communicated to Plaintiffs or Plaintiffs' physicians. Plaintiffs were unaware of said defect prior to ingesting Zyprexa.

21.     Based upon information and belief, each of the physicians who supplied Zyprexa to Plaintiffs reasonably relied on the representations made to him or her by Defendant Eli Lilly prior to the date of prescribing Zyprexa for use. Based upon information and belief, the physicians involved reasonably relied on the representations regarding the safety of Zyprexa and would have altered his or her prescription habits by considering alternative treatments, altering his or her informed consent, and/or would not have recommended Zyprexa if he or she had known the true facts regarding the safety of Zyprexa. Based upon information and belief, thus, had Plaintiffs' physicians known the true facts, the drug would not have been prescribed to Plaintiffs because of one or more of the following items: the physician would not have recommended Zyprexa to the individual Plaintiff and would have prescribed an alternative product; or, the Plaintiffs would have used the information provided by the physician and would have chosen an alternative medicine. In either event, the Defendant's failure to provide true and accurate information to Plaintiffs' physicians, by omission and or commission, was the proximate cause of Plaintiffs' injuries.

22.     Prior to the date upon which the aforesaid product was prescribed to Plaintiffs, the Defendant knew, or should have known, that the product was extremely dangerous and unsafe

for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, pancreatitis, diabetes, ketoacidosis and other injuries. The Defendant failed to take appropriate action to cure the nature of these defects or to warn users of the product or their physicians of such dangerous characteristics.

### FIRST CAUSE OF ACTION
### [Strict Products Liability Failure to Warn]

23.     Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraph 1 through 22, inclusive, of this Original Complaint, and for cause of action states that Defendant's conduct was in violation of the Indiana Product Liability Act (IPLA) and/or the products liability law for each Plaintiffs' home state for failure to adequately warn. *See e.g.,* Ind. Code Ann. § 34-20-1-1, *et. seq.*

24.     Defendant has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting Zyprexa, and through that conduct has knowingly and intentionally placed Zyprexa into the stream of commerce with full knowledge that it would arrive in the judicial district where each of the Plaintiffs ingested it. Defendant Eli Lilly did in fact sell, distribute, supply, manufacture, and/or promote, individually and collectively, Zyprexa to Plaintiffs and to Plaintiffs' prescribing physicians. Additionally, Defendant Eli Lilly expected the Zyprexa it was selling, distributing and supplying, manufacturing and/or promoting to reach, and Zyprexa did in fact reach, prescribing physicians and consumers in this State and throughout the United States, including Plaintiffs, and Plaintiffs' prescribing physicians, without substantial change in the condition of the product.

25.     At all times herein mentioned, the aforesaid product was defective and unsafe in

manufacture, and was so at the time it was distributed by Defendant Eli Lilly and ingested by Plaintiffs. Specifically, the Zyprexa ingested by Plaintiffs was in a defective condition unreasonably dangerous because Defendant Eli Lilly had failed to properly package or label the product to give reasonable warnings of danger about the product.    Given the severity of the adverse effects of Zyprexa, the aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Zyprexa. These defects caused serious injuries to the user when Zyprexa was used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended and/or marketed by the Defendant.

26.    Defendant Eli Lilly knew that the aforesaid product was to be used by the user without inspection for defects therein, and that the Plaintiffs were among the class of persons that might foreseeably be harmed by the product Zyprexa after its prescription, purchase and ingestion.

27.    The Plaintiffs used the product for its intended purpose.

28.    The aforesaid product was unaccompanied by true and accurate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, and/or off-label uses promoted by or known by Defendant Eli Lilly involved substantial dangers not readily recognizable by the ordinary, reasonably foreseeable user of the product. Defendant Eli Lilly failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes,

hyperglycemia, pancreatitis, and/or ketoacidosis, among others.

29.     Plaintiffs did not know, nor did Plaintiffs have reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects and/or the failure to warn of these defects caused the herein described injuries to Plaintiffs and the injuries from which the Plaintiffs continue to suffer.

30.     Defendant Eli Lilly knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

31.     Plaintiffs neither knew, nor had reason to know, at the time of the use of aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. Thus, Defendant Eli Lilly's failure to adequately warn Plaintiffs and/or Plaintiffs' physicians proximately caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs respectfully requess this Court enter judgment in Plaintiffs' favor and against Defendant for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## SECOND CAUSE OF ACTION
### [Strict Products Liability/Defective Product]

32.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in paragraphs 1 through 31, inclusive, of this Original Complaint, and for cause of action states that Defendant's conduct was in violation of the Indiana Product

Liability Act (IPLA) and/or the products liability law for each Plaintiffs' home state for strict liability in tort because the Zyprexa purchased and ingested by Plaintiffs was a defective product and unreasonably dangerous. *See e.g.,* Ind. Code Ann. § 34-20-1-1, *et. seq.*

33.    Defendant Eli Lilly has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting Zyprexa, and through that conduct has knowingly and intentionally placed Zyprexa into the stream of commerce with full knowledge that it would arrive where the Plaintiffs purchased and ingested it. Defendant Eli Lilly did in fact sell, distribute, supply, manufacture, and/or promote, individually and collectively, Zyprexa to Plaintiffs, and Plaintiffs' prescribing physicians. Additionally, Defendant Eli Lilly expected the Zyprexa they were selling, distributing and supplying, manufacturing and/or promoting to reach, and did in fact reach, prescribing physicians and consumers in this State and within the Plaintiffs' home state, including Plaintiffs, and his or her prescribing physician[s], without substantial change in the condition of the product.

34.    The Zyprexa manufactured and/or supplied by Defendant Eli Lilly was placed into the stream of commerce by Defendant Eli Lilly in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation and/or that the Zyprexa was in a condition (a) not contemplated by reasonable persons among those considered expected users or consumers of the product and (b) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expected ways of consumption.

35.    Alternatively, the Zyprexa manufactured and/or supplied by Defendant Eli Lilly

was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect, and it was more dangerous than other forms of treatment.

36.     The Zyprexa manufactured and/or supplied by Defendant Eli Lilly was defective because Defendant Eli Lilly knew or should have known that the product created a risk of harm to consumers and that Defendant Eli Lilly failed to adequately warn of said risks.

37.     The Zyprexa manufactured and/or supplied by Defendant Eli Lilly was defective due to one or more of the following:

        a.  The product was not safe for ingestion as designed in that it caused permanent and/or progressive physical injury and other physical injuries;

        b.  The product as designed and/or sold by Defendants did not properly protect users from harm;

        c.  The product caused Plaintiffs to be exposed to harmful substances;

        d.  The product was not safe for its intended use alone or in combination with other drugs known to be used in conjunction with the product;

        e.  The product as designed and/or distributed did not properly address various safety issues, including but not limited to drug interaction and impact upon the safety of users;

        f.  The product was not tested properly or adequately;

        g.  The risk of product usage for known and/or intended uses was outweighed by the risk of usage;

        h.  The product had an inadequate warning;

        i.  The Defendant failed its post-sale duty to warn of newly discovered harm; and/or

        j.  The product was otherwise in a defective condition unreasonably dangerous.

38.     As designed, the Zyprexa contained unreasonably dangerous design defects and

was not reasonably safe as intended making the risks of Zyprexa outweigh its benefits, if any, and subjecting Plaintiffs to risks which exceeded any alleged benefits of Zyprexa.

39. The Zyprexa manufactured and/or supplied by Defendant Eli Lilly was defective due to inadequate post-marketing warning or instruction because after Defendant Eli Lilly knew or should have known of the risk of injury from Zyprexa, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product improperly.

40. The Plaintiffs used the product for its intended and/or reasonably expected usage or purpose.

41. As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by Defendant Eli Lilly, Plaintiffs were caused to suffer harm and the herein described injuries from which the Plaintiffs continue to suffer.

42. WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Eli Lilly for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

### THIRD CAUSE OF ACTION
### [Negligence/Gross Negligence]

43. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 42, inclusive, of this Original Complaint.

44. At all times herein mentioned, Defendant Eli Lilly had a duty to properly design,

manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and take such steps to assure that the product Zyprexa did not cause users to suffer from unreasonable and dangerous side effects. Defendant Eli Lilly owed Plaintiffs a duty. Defendant Eli Lilly breached that duty and as a result, Plaintiffs suffered injuries because of the causal connections between Defendant's breach of duty and Plaintiffs' injuries.

45.     At all times herein mentioned, Defendant Eli Lilly knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and provided with proper warnings, it was likely to injure the product's user.

46.     Defendant Eli Lilly so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended.

47.     Defendant Eli Lilly negligently failed to warn of the nature and scope of dangers associated with Zyprexa.

48.     Defendant Eli Lilly was aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendant Eli Lilly knew or should have known that Zyprexa caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendant Eli Lilly willfully and deliberately failed to avoid those consequences, and in doing so, Defendant acted with a conscious disregard of the safety of

Plaintiffs.

49.    In all the above actions, Defendant Eli Lilly failed to act as a reasonable and prudent pharmaceutical manufacturer of a prescription drug and breach the standard of care, proximately causing the Plaintiffs' physical injuries and other damages.  As a result of the carelessness, negligence, and/or gross negligence of Defendant Eli Lilly alleged herein and in such other ways to be later shown, the aforesaid product caused Plaintiffs to sustain injuries as herein alleged.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Eli Lilly in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

### FOURTH CAUSE OF ACTION
### [Breach of Implied Warranty]

50.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 49, inclusive, of this Original Complaint.

51.    At all times mentioned herein, Defendant Eli Lilly manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was provided to Plaintiffs, Defendant Eli Lilly impliedly warranted to Plaintiffs that the product was of merchantable quality and safe for the use for which it was intended.

52.    Plaintiffs reasonably relied on the skill and judgment of the Defendant in using

the aforesaid product.

53.     The product was unsafe for its intended use and it was not of merchantable quality, as warranted by Defendant Eli Lilly in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. As a direct and proximate result of the Defendant's breach of warranty, the Plaintiffs sustained damages as alleged herein.

54.     The aforesaid product did cause Plaintiffs to sustain injuries and caused Plaintiffs to sustain damages as herein alleged.

55.     After Plaintiffs were made aware that Plaintiffs' injuries were a result of the aforesaid product, notice was duly given to Defendant Eli Lilly of the breach of said warranty.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Eli Lilly in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

### FIFTH CAUSE OF ACTION
### [Breach of Express Warranty]

56.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 55, inclusive, of this Original Complaint.

57.     The aforementioned manufacturing, compounding, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for

use by Plaintiffs and other members of the general public.

58.     The Defendant expressly warranted that Zyprexa was safe. Upon information and belief, these warranties were included numerous advertisements to public, documents prepared for physicians, documents prepared for the public and were also spoken directly to physicians by agents of Defendant Eli Lilly. Upon information and belief, Defendant Eli Lilly knew or reasonably should have known that physicians would reasonably rely of these representations, and that consumers would rely on the prescription advice of their physicians who were acting based on these fraudulent representations.

59.     Zyprexa failed to conform to the Defendant's warranties because Zyprexa was not safe.

60.     At the time of the making of the express warranties, Defendant Eli Lilly had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

61.     Upon information and belief, Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendant Eli Lilly, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain injuries and Plaintiffs sustained damages as herein alleged.

62.     As soon as the true nature of the product, and the fact that the warranty and

representations were false, were ascertained, Defendant Eli Lilly was notified of the breach of said warranty.

63.    As a direct and proximate result of the breach of these warranties, Plaintiffs sustained damages as alleged herein.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## SIXTH CAUSE OF ACTION
### [Fraud]

64.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraph 1 through 63, inclusive, of this Original Complaint. Paragraphs 65 through 71 are plead upon information and belief.

65.    Defendant Eli Lilly falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder, schizophrenia, and depression and other medical conditions, was safer than other readily available treatments. The representations by said Defendant were, in fact, false. The true facts, include but are not limited to, the fact that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs.

66.    The representations by said Defendant were, in fact, false. The true facts that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the product, including

but not limited to the development of diabetes, pancreatitis, hyperglycemia, ketoacidosis, and death. Defendant did not disclose or warn Plaintiffs or Plaintiffs' physicians about the known risk of injury in using the product. Defendant misrepresented the safety of the product, represented that the product marketed was safe for treating, bipolar disorder, schizophrenia, depression and other medical conditions, concealed warnings of the known or knowable risks of injury in using the product.

67.    When said Defendant made these representations about material facts, it knew that they were false. Defendant made said representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner herein alleged.

68.    At the time Defendant made the aforesaid representations, and at the time Plaintiffs took the actions herein alleged, upon information and belief Plaintiffs and Plaintiffs' physicians were ignorant of the falsity of these representations, reasonably believed them to be true, and relied upon them. Upon information and belief, in reliance upon said representations, Plaintiffs were induced to, and did, use the aforesaid product as herein described. Plaintiffs' reasonable reliance on the deceptive statements resulted in Plaintiffs' injuries.

69.    If Plaintiffs had known the actual facts, Plaintiffs would not have taken such action.

70.    The reliance of Plaintiffs and Plaintiffs' physicians on Defendant's representations was justified and reasonable because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

71.    As a result of Defendant's fraud and deceit, Plaintiffs were caused to sustain the

herein described injuries.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## SEVENTH CAUSE OF ACTION
### [Fraud by Concealment]

72.  Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in paragraph 1 though 71, inclusive, of this Original Complaint and for cause of action alleges as follows. Paragraphs 73 through 80 are plead upon information and belief.

73.  At all times mentioned herein, Defendant Eli Lilly had the duty and obligation to disclose to Plaintiffs and to Plaintiffs' physicians, the true facts concerning the aforesaid product, specifically that said product was dangerous and defective and how likely it was to cause serious consequences to users, including injuries and death, and how unnecessary it was to use said product for the purposes indicated when considering alternative methods of treatment. Defendant made affirmative representations as set forth herein to Plaintiffs, Plaintiffs' physicians and the general public prior to the date Zyprexa was provided to Plaintiffs, while concealing material facts mentioned herein.

74.  At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiffs and to Plaintiffs' physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to diabetes, pancreatitis, hypergylycemia

and ketoacidosis.

75. At all times herein mentioned, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth herein from Plaintiffs and Plaintiffs' physicians with the intent to defraud as herein alleged.

76. At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product.

77. As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein.

78. That at all times herein mentioned, Defendant intentionally and willfully concealed or suppressed the facts set forth herein from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged.

79. At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, Plaintiffs would not have ingested Zyprexa.

80. As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## EIGHTH CAUSE OF ACTION
### [Unjust Enrichment as to Defendant]

81.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and for cause of action allege as follows:

82.    As a direct, proximate, and foreseeable result of Defendant's acts and otherwise wrongful conduct, Plaintiffs were gravely harmed. Defendant profited and benefited from the sale of Zyprexa, even as it injured Plaintiffs.

83.    Defendant has voluntarily accepted and retained these profits and benefits derived from consumers, including Plaintiffs, with full knowledge and awareness that, as a result of Defendant's unconscionable and intentional wrongdoing, consumers, including Plaintiffs, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant, or that reasonable consumers expected. Plaintiffs purchased and ingested medicine that each expected would improve his or her health, and instead found his or her health destroyed.

84.    By virtue of the conscious wrongdoing alleged in this Complaint, Defendant has been unjustly enriched at the expense of Plaintiffs, who are entitled to in equity, and hereby seek, the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and

proper; and demands that the issues herein contained be tried by a jury.

### FDA MISLED OR UNAWARE

85.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if they were fully set forth here at length, and for cause of action allege as follows:

86.    Defendant before and/or after pre-market approval and/or licensing of the product at issue withheld from and/or misrepresented to the United States Food and Drug Administration (FDA) required information that was material and relevant to the performance of the product. Plaintiffs do not make a claim as such for "fraud on the FDA," but Plaintiffs do allege that these misrepresentations and/or concealment and/or omissions are a contributing, producing and/or proximate cause of Plaintiffs' injuries.

87.    Further, Defendant recommended, promoted, over-promoted and/or advertised the product at issue for indications not approved by the FDA and (a) the product was used as recommended, promoted and/or advertised, and (b) this use was a proximate cause of Plaintiffs' injuries.

88.    The conduct outlined in the above three paragraphs negate any defense based on FDA approval including approval of products, labels or warnings, and overcome any presumption that might be argued was created by FDA approval.

### PUNITIVE AND/OR EXEMPLARY DAMAGES

89.    Clear and convincing evidence exists that the above described actions of Defendant Eli Lilly was committed oppressively, fraudulently, or with malice or gross negligence. Therefore, Plaintiffs specifically requests that the Court submit jury questions on

issues of Defendant Eli Lilly's conduct to support Punitive and/or Exemplary Damages in the maximum amount allowed by Indiana law.

## DISCOVERY RULE

90.     Each of the Plaintiffs has timely filed his or her Complaint within the appropriate legal timeframe from when his or her claim accrued, his or her personal injury was diagnosed, and/or alternatively from when the individual Plaintiff became aware of the information required under the appropriate law, statute or legal authority, including without limitation the legal doctrine known as the "Discovery Rule".

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief from Defendant as follows:

91.     In support of said damages, Plaintiffs incorporate by reference all preceding and following paragraphs as if fully set forth herein and further allege as follows:

a)      For general damages in a sum in excess of the jurisdictional minimum of this Court;

b)      For special damages in a sum in excess of the jurisdictional minimum of this Court;

c)      For compensatory damages in excess of the jurisdictional minimum of this Court;

d)      For consequential damages in excess of the jurisdictional minimum of this Court, according to proof;

e)      Medical, incidental, and hospital expenses according to proof;

f)      Future medical, incidental and hospital expenses according to proof;

g)      Prejudgment and post judgment interest as provided by law;

h)      Full refund of all purchase costs Plaintiffs paid for Zyprexa;

i)      Punitive Damages;

j)      Attorneys' fees, expenses, and costs of this action; and

k)      Such further relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

92.      Plaintiffs demand a jury trial in this action.

Respectfully submitted,

_____

J. Aaron Cooke, Atty No. 19768-64

Jeffrey A. Cooke, Atty No. 3358-79

COOKE LAW FIRM

P.O. Box 188

Lafayette, IN 47902-0188

Telephone:  (765) 423-5628

Facsimile:  (765) 423-1373

Email:  aaron@cookelaw.com

jeff@cookelaw.com

**OF COUNSEL**

The Law Office of Patrick J. Mulligan, P.C.

Patrick J. Mulligan, Esq.
Texas State Bar No. 14651270
Eric Roberson, Esq.
Texas State Bar No. 00792804
Reid Stewart, Esq.
Texas State Bar No. 24003310
Bill Arnold, Esq.
Texas State Bar No. 01349500

2911 Turtle Creek Blvd., Suite 900
Dallas, Texas 75219
Telephone: (214) 219-9779
Telecopier: (214) 520-8789

**ATTORNEYS FOR PLAINTIFFS**